UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | | |
|---|---|---|
| TRANSCANADA POWER MARKETING LTD.,<br><br>        Plaintiff,<br><br>v.<br><br>IAN A. BOWLES, individually and in his official capacity as Secretary of the Massachusetts Executive Office of Energy and Environmental Affairs; PHILIP GIUDICE, individually and in his official capacity as Commissioner of the Massachusetts Department of Energy Resources; PAUL J. HIBBARD, individually and in his official capacity as Chairman of the Massachusetts Department of Public Utilities; and TIM WOOLF and JOLETTE A. WESTBROOK, individually and in their official capacities as Commissioners of the Massachusetts Department of Public Utilities,<br><br>        Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. |

## COMPLAINT

## INTRODUCTION

TransCanada Power Marketing Ltd. ("TransCanada") brings this action to redress violations of the Commerce Clause of the U.S. Constitution in two Massachusetts renewable energy programs -- (I) a program mandating and soliciting long-term contracts for renewable energy and (II) a new solar "carve-out" in the existing mandate for renewable energy portfolio standards. Each of these recently adopted programs discriminates on its face against out-of-state producers. This discrimination is forbidden by the Commerce Clause. TransCanada seeks declaratory and injunctive relief, and an award of damages under 42 U.S.C. § 1983.

## THE PARTIES

1.      TransCanada is a power marketing company with its principal place of business in Westborough, Worcester County, Massachusetts.  TransCanada purchases electricity from generation sources, such as power plants, and resells electricity to distribution companies and retail customers throughout the northeastern United States.  TransCanada is an indirect wholly owned subsidiary of TransCanada Corporation, which is a leader in the development and operation of energy infrastructure in Canada and the United States.  Corporate affiliates of TransCanada generate power in various locations, primarily outside Massachusetts, including Maine, New Hampshire, Vermont, Rhode Island, New York, Arizona and Canada.  TransCanada markets the output of corporate affiliates, and also purchases and markets output of other generators.  TransCanada is licensed to supply electricity at retail in Massachusetts.

2.      Ian A. Bowles is the Secretary of the Massachusetts Executive Office of Energy and Environmental Affairs.  He is named as a defendant in his official capacity and in his individual capacity with respect to the claims for damages under 42 U.S.C. § 1983.  He resides in the Commonwealth of Massachusetts.  The agencies that report to him include the Department of Energy Resources ("DOER") and the Department of Public Utilities ("DPU").  He has publicly announced his support for the discriminatory regulations and actions that are alleged in this Complaint.

3.      Philip Giudice is the Commissioner of the Massachusetts DOER.  He is named as a defendant in his official capacity and in his individual capacity with respect to the claims for damages under 42 U.S.C. § 1983.  He resides in the Commonwealth of Massachusetts.

4.      Paul J. Hibbard is the Chairman of the Massachusetts DPU.  He is named as a defendant in his official capacity and in his individual capacity with respect to the claims for damages under 42 U.S.C. § 1983.  He resides in the Commonwealth of Massachusetts.

5.      Tim Woolf is a Commissioner of the Massachusetts DPU.  He is named as a defendant in his official capacity and in his individual capacity with respect to the claims for damages under 42 U.S.C. § 1983.  He resides in the Commonwealth of Massachusetts.

6.      Jolette A. Westbrook is a Commissioner of the Massachusetts DPU.  She is named as a defendant in her official capacity and in her individual capacity with respect to the claims for damages under 42 U.S.C. § 1983.  She resides in the Commonwealth of Massachusetts.

## JURISDICTION AND VENUE

7.      This action arises under the Commerce Clause of the U.S. Constitution and under 42 U.S.C. § 1983.  This Court has jurisdiction under 28 U.S.C. § 1331.

8.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(1), (2) and (3).

9.      This Court is empowered to provide declaratory relief in this action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and Rule 57 of the Federal Rules of Civil Procedure.

10.     This Court is empowered to provide injunctive relief in this action pursuant to, inter alia, 28 U.S.C. § 2202 and Rule 65 of the Federal Rules of Civil Procedure.

## THE COMMERCE CLAUSE

11.     The First Circuit Court of Appeals recently summarized the governing standards of law under the Commerce Clause of the United States Constitution:

> The Commerce Clause prevents states from creating protectionist
> barriers to interstate trade…. Discrimination under the Commerce
> Clause means differential treatment of in-state and out-of-state

> economic interests that benefits the former and burdens the latter, as opposed to state laws that regulate evenhandedly with only incidental effects on interstate commerce.... [A] discriminatory law is virtually per se invalid ... and will survive only if it advances a legitimate local purpose that cannot be adequately served by reasonable non-discriminatory alternatives.... The state bears the burden of showing legitimate local purposes and the lack of non-discriminatory alternatives, and discriminatory state laws rarely satisfy this exacting standard.

Family Winemakers of California v. Jenkins, 592 F.3d 1, 9 (1st Cir. 2010) (internal citations and quotations omitted) (emphasis added).

12.     The protection afforded by the Commerce Clause is well-known among energy regulators such as the Defendants.

13.     For example, the Commerce Clause was referenced in a memo issued by DOER, under the name of Mr. Giudice, dated October 31, 2008, titled "Imports Feasibility Study: Capacity Commitment and Netting Requirement." Page 2 of this memo states: "The United States Supreme Court has ruled that restrictions on commerce that discriminate based on location face strict scrutiny. For a regulation to survive there must be no other means to advance a legitimate local interest."

14.     The same type of issue that is raised in this Complaint was addressed in a publication prepared for the National Association of Regulatory Utility Commissioners, dated February 2001, titled "The Renewables Portfolio Standard: A Practical Guide." Page A-1 of this publication states as follows (emphasis added):

> Some states have limited renewable resource eligibility to production from generation facilities located within the state. Absent a significant change in Supreme Court application of the Commerce Clause of the U.S. Constitution, the restriction to in-state generation will, if challenged, be found unconstitutional. The courts have continually found that facial discrimination by a state against out-of-state resources is 'virtually per se invalid.' Philadelphia v. New Jersey, 437 U.S. 617, 624 (invalidating New

Jersey's ban on imports of out-of-state garbage).  The exclusion of out-of-state generation is sufficiently similar to court precedents to <u>expect invalidation</u>....

## FACTS, STATUTORY BACKGROUND AND REGULATORY IMPLEMENTATION

I.    <u>LONG-TERM CONTRACTS FOR RENEWABLE ENERGY</u>

        A.    <u>Renewable Energy</u>

15.    The great majority of energy produced and distributed in the United States derives from nuclear generation and from fossil fuels, principally coal, gas and oil, which are not renewable.  Legislative policy in Massachusetts and in many other states favors the development of renewable energy sources.  Renewable energy sources are recognized in Massachusetts General Laws ch. 25A, § 11F(b) as including:  solar photovoltaic and solar thermal electric energy; wind energy; ocean thermal, wave and tidal energy; fuel cells utilizing renewable fuels; landfill gas; waste-to-energy; naturally flowing water and hydroelectric energy; low emission advanced biomass power conversion technologies; and geothermal energy.

16.    TransCanada and its corporate affiliates are significant developers and producers of renewable energy in the United States and Canada.  They have invested substantial sums of money in developing renewable energy.  For example, an affiliate of TransCanada is constructing the Kibby Wind Power Project, located along Kibby Mountain and Kibby Range in the Boundary Mountains of Maine.  The capital cost of the Kibby Wind Power Project exceeds $300 million dollars.  Half of the Kibby Wind Power Project is operational, providing renewable electricity for the equivalent of 25,000 average-sized homes.  It is capable of providing a significant volume of renewable energy to Massachusetts.  Its output is marketed by TransCanada.

17.    The best way to develop renewable energy is to facilitate long-term contracts that assure stable funding for, and in turn promise a stable supply of, renewable energy.

TransCanada wishes to compete for long-term contracts to supply renewable energy to

Massachusetts from the Kibby Wind Power Project and from other sources outside

Massachusetts.

> B.   Massachusetts Has Recently Imposed A Requirement Of Entering Long-Term Contracts With Massachusetts Generators.  This Requirement Is Discriminatory On Its Face.

18.    The Massachusetts Legislature enacted the Green Communities Act in 2008.  St.

2008, c. 169.  Section 83 of the Green Communities Act ("Section 83") requires electric

distribution companies to enter into long-term contracts with generators of renewable energy

(hereinafter referred to as the "Long-Term Renewable Energy Contract program").

19.    In violation of the Commerce Clause, Section 83 requires that these contracts

must be entered with renewable energy generators that are located in Massachusetts.  Section 83

provides in relevant part as follows (emphasis added):

> Commencing on July 1, 2009, and continuing for a period of 5 years thereafter, each distribution company ... shall be required twice in that 5-year period to solicit proposals from renewable energy developers and, provided reasonable proposals have been received, enter into cost-effective long-term contracts to facilitate the financing of renewable energy generation within the jurisdictional boundaries of the Commonwealth, including state waters or in adjacent federal waters.

20.    The legislature recognized that Section 83 might well be challenged in court.

Section 83 further provides:

> If any provision of this section is subject to a judicial challenge, the department of public utilities may suspend the applicability of the challenged provision during the pendency of the judicial action until final resolution of the challenge and any appeals, and shall issue such orders and take such other actions as are necessary to ensure that the provisions that are not challenged are implemented expeditiously to achieve the public purposes of this provision.

21.     Section 83 directs both DPU and DOER to adopt regulations consistent with the

statute.  DPU has promulgated regulations, which are codified beginning at 220 C.M.R. 17.00.

Section 17.01 states the purpose of these regulations as follows (emphasis added):

> Purpose.  220 C.M.R. Section 17.00 establishes regulations for
> electric distribution companies to enter into long-term contracts
> with renewable energy developers to facilitate the financing of
> renewable energy generation within the Commonwealth of
> Massachusetts, its waters, and adjacent federal waters.

22.     On January 20, 2010, DOER issued a press release announcing the first step

toward implementing the Long-Term Renewable Energy Contract program in discrimination

against out-of-state energy suppliers.  DOER stated (emphasis added):

> Advancing the clean power development goals embodied in
> landmark energy reform legislation signed by Governor Patrick in
> 2008, the Department of Energy Resources (DOER) today
> announced it is coordinating a process under which the
> Commonwealth's investor-owned electric utilities are soliciting
> bids for approximately 750,000 megawatt hours of energy to be
> supplied by new renewable power projects sited in Massachusetts.
>
> The solicitation announced today is the next step in
> implementation of the Green Community [sic] Act, which requires
> Massachusetts electric distribution companies to enter into 10- to
> 15-year contracts with renewable energy projects located within
> state boundaries, including state and adjacent federal waters.

23.     As announced in the press release, DOER issued a Request For Proposals For

Long-Term Contracts For Renewable Energy Projects ("the RFP") dated January 15, 2010.

Page 6 of the RFP provides that (emphasis added):

> (c)     Pursuant to Section 83 of the GCA, the generation
> facility must be located within the jurisdictional boundaries of the
> Commonwealth, including state waters, or in adjacent federal
> waters.

24.     Section 83, the regulations at 220 C.M.R. 17.00 et seq. and the RFP discriminate on their face against out-of-state producers.  Their discriminatory features are not saved by any legitimate rationale.  They are unconstitutional.

25.     Section 83, the regulations at 220 C.M.R. 17.00 et seq. and the RFP prevent TransCanada from bidding to fulfill the required long-term contracts by offering renewable energy generated outside Massachusetts, including renewable energy from the Kibby Wind Power Project.  This deprives TransCanada of a uniquely important business opportunity.  It prevents TransCanada from entering long-term customer relationships, from maximizing the competitive value of the Kibby Wind Power Project (and other renewable energy generation sites developed by TransCanada's corporate affiliates), and from promoting TransCanada's competitive position in renewable energy.  The discriminatory requirements of the Long-Term Renewable Energy Contract program are therefore causing and will cause substantial harm to TransCanada.

26.     The discriminatory requirements quoted above also harm the public of Massachusetts by increasing prices for renewable energy.  If TransCanada (and other out-of-state generators) were free to compete for long-term contracts in Massachusetts, the cost of renewable energy sold in this state would be lower, the prices paid by Massachusetts businesses and citizens would be lower, and renewable energy would be adopted by the purchasing public more quickly.

27.     TransCanada submitted comments to DPU and DOER on November 5, 2008, noting that participation in the Long-Term Renewable Energy Contract program should not be limited to Massachusetts generators.  There is no feasible administrative remedy by which TransCanada may seek relief from the constitutional violations in Section 83, the regulations at 220 C.M.R. 17.00 et seq. and the RFP.

II.   RENEWABLE ENERGY CERTIFICATES

28.   A separate Massachusetts program also began to discriminate against out-of-state

generators in 2010.  In 1997 Massachusetts enacted the Electric Utility Restructuring Act.  It

established a broad renewable energy portfolio standard, codified in Massachusetts General

Laws ch. 25A, § 11F.  This existing program has been in operation for several years.  In 2008,

however, the state legislature added a new "carve-out", which requires purchases from

generation units located in Massachusetts, to the exclusion of generation units located outside

Massachusetts.  DOER is now taking the first step to implement this discriminatory requirement.

A.   The REC Program Enacted In 1997 Is Operational.

29.   Enacted in 1997, Massachusetts General Laws ch. 25A, § 11F requires that a

retail electric supplier must provide a minimum percentage of kilowatt-hours sales from

renewable energy generating sources.  This general requirement permits purchases from

generators that are located outside Massachusetts.

30.   DOER's regulations implementing this existing requirement are set out beginning

at 225 C.M.R. 14.00.  These regulations provide that the statutory obligations may be met in part

through purchasing Renewable Energy Certificates ("RECs") from qualifying renewable energy

sources.  In order to qualify to issue RECs, a renewable generation unit must, among other

criteria, generate power for the power grid operated by ISO New England and have an account

participating with the New England Power Pool ("NEPOOL") Generation Information System

("GIS").  Under the existing REC program, the generation unit need not be located in

Massachusetts -- it may be wired to the electrical system anywhere within the ISO New England

control area or an adjacent control area.  225 C.M.R. 14.05(1)(c)-(d) and 14.05(5).  A control

area is an electric power system (or a combination of electric power systems) to which a

common automatic generation control scheme is applied in order to match the output of electric

power generators with the electric load. The ISO New England control area includes most of

New England, but does not include portions of Northern Maine. New York, Quebec, and New

Brunswick are all separate control areas that interconnect with, and are adjacent to, the ISO New

England control area.

      31.    The DOER Annual Report for 2007 summarizes how Massachusetts retail

electricity suppliers comply with the existing REC requirement:

> Retail Electricity Suppliers … meet their annual RPS [renewable
> energy portfolio standard] obligations by acquiring a sufficient
> quantity of RPS-qualified renewable electricity certificates (RECs)
> that are created and recorded at the NEPOOL Generation
> Information System (GIS). The NEPOOL GIS tracks all electricity
> generated within the ISO New England (ISO-NE) control area and
> fed onto the New England grid, as well as electricity exchanged
> between ISO-NE and adjacent control areas. For each megawatt-
> hour (MWh) of electricity, whether renewable or not, one serial-
> numbered, electronic certificate is created and added to the
> NEPOOL GIS account of the unit that generated the MWh.
> Certificates that represent renewable generation are coded
> accordingly and known as RECs.

DOER, Renewable Energy Portfolio Standard Annual RPS Compliance Report for 2007 (Nov.

24, 2008) at 4. Pursuant to 225 C.M.R. 14.07(1), each Massachusetts retail electricity supplier is

required to purchase a specified amount of RECs based on the supplier's total electrical energy

sales in Massachusetts for the year. These RECs may be generated by any qualified renewable

generation source, and the generation source need not be located in Massachusetts.

      32.    DOER itself declares that the existing REC program is a success. According to

DOER's most recent Annual Compliance Report, supra, as of 2007 more than three percent of

the Commonwealth's retail electricity supply derived from renewable sources. Twenty-four

retail electricity suppliers -- including TransCanada -- had a renewable energy portfolio standard

obligation in 2007. Id. at 3. They met this obligation through renewable energy generation involving biomass (49%), landfill methane (30%), wind farms (19%), anaerobic digestion and solar photovoltaic arrays. Id. The renewable energy generators, which gave rise to RECs meeting these obligations, are located in Maine (32%), New York (17%), New Hampshire (16%), and Canadian provinces (16%), as well as in Massachusetts (12%). Id. For example, DOER has recognized that the Kibby Wind Power Project in Maine (owned and operated by an affiliate of TransCanada) is a qualified source for RECs. Id. at 23. DOER's Report demonstrates that much of the success of the REC program has derived from renewable energy generated outside Massachusetts (and indeed outside the ISO New England control area).

33.     When a renewable energy source generates one MWh of electricity, the power grid operated by ISO New England is able to forego one MWh of electricity from fossil fuels. Essentially one MWh of traditional power is replaced by one MWh of renewable power. This benefits the environment. The traditional power that is replaced could have been drawn from any power plants that generate power for the power grid operated by ISO New England, including power plants located in other control areas outside the ISO New England control area. The environmental benefits of the RECs are experienced in every location that is affected by these traditional power plants, including, but not limited to, Massachusetts.

> B.     Massachusetts Has Recently Imposed A Solar Carve-Out, Which Requires Purchasing Solar RECs From Generators Located In Massachusetts. This Requirement Is Discriminatory On Its Face.

34.     Section 32 of the Green Communities Act of 2008 amended Massachusetts General Laws ch. 25A, § 11F. It added, among other provisions, § 11F(g), which provides as follows (emphasis added):

> In satisfying its annual obligations under [the RPS program], each retail supplier shall provide a portion of the required minimum

> percentage of kilowatt-hours sales from new on-site renewable
> energy generating sources <u>located in the Commonwealth</u> and
> having a power production capacity of not more than 2 megawatts
> which began operation after December 31, 2007, including, but not
> limited to, behind the meter generation.... [T]he department may
> specify that a certain percentage of these requirements shall be met
> through energy generated from a specific technology or fuel type.

35.    On its face this 2008 statute discriminates against renewable energy generation

sources located outside Massachusetts.  The 2008 statute permits, but does not require,

arrangements for "behind the meter generation."

36.    Acting under ch. 25A, § 11F(g), during 2010 DOER has added to the general

REC requirements a new carve-out (referred to by DOER as "the Solar Carve-Out"), which

requires that each retail electricity supplier must purchase a portion of its required RECs from

solar generators located within Massachusetts.  The RECs required by this carve-out are known

as Solar Renewable Energy Certificates ("Solar RECs").

37.    The new Solar RECs will be verified in much the same manner as the existing

RECs.  DOER explained this aspect of the Solar Carve-Out in a webpage posted in 2010:

> Electricity produced by qualified solar PV systems is broken into
> two products:  (1) The electricity production that is used on-site or
> delivered to the grid.  (2) The positive environmental attributes
> associated with this clean energy production.  SRECs represent the
> second product.  One SREC is generated each time a solar PV
> system generates 1 MWh (or 1000 kWh).  The SREC is minted
> electronically and deposited quarterly in the generator's (or its
> aggregator's) account on the NEPOOL GIS, based on verified
> meter readings.

Just like the generators in the existing REC program, the solar energy generators will have

accounts with the NEPOOL Generation Information System, as DOER explained.  As in the

existing REC program, one MWh of solar power will essentially replace one MWh of traditional

power.  As in the existing REC program, the environmental benefits of the Solar RECs will be

experienced in every location that is affected by traditional power plants generating power for

the power grid operated by ISO New England. These may include power plants located in other

control areas. There is no reason that the solar generators must be located in Massachusetts in

order to create and to verify "the positive environmental attributes associated with this clean

energy production."

38.     Nonetheless, DOER's regulations for the Solar Carve-Out expressly discriminate

in favor of Massachusetts-based solar generators and against out-of-state generation units. On

January 8, 2010, DOER promulgated emergency regulations, effective as of that date, which

revised 225 C.M.R. 14.00. Then, subsequent to a public hearing, DOER issued proposed

amended regulations on March 2, 2010. The emergency regulations (which are already in effect)

and the proposed amended regulations both provide as follows at 225 C.M.R. 14.05(4)(a)

(emphasis added):

>           The Solar Carve-Out Renewable Generation Unit must be used on
>           site, <u>located in the Commonwealth of Massachusetts</u> and be
>           interconnected with the electric grid.

39.     The Solar Carve-Out regulations -- requiring that an eligible generator must be

"located in the Commonwealth of Massachusetts" -- are discriminatory on their face.

40.     The discriminatory system being implemented by DOER in the Solar Carve-Out

is inefficient and extremely expensive. DOER has announced complicated auction rules, which

are designed to encourage a market for buying and selling the Massachusetts-based Solar RECs.

These rules are set forth in 225 C.M.R. 14.05(4)(c)-(h). They aim to support a price for Solar

RECs between $300 and $600 per MWh. <u>See</u> 225 C.M.R. at Section 14.05(4)(e) and Section

14.08(3)(b)(2). This is a very high price. By way of comparison, prices for the existing Class I

REC program "have settled in the $25-$30 MWh range," according to a memo posted by DOER

on April 2, 2010. See DOER, "RPS Solar Carve-Out:  Discussion And Analysis Of Program

Costs," page 4.  The claimed success of the existing REC program has derived primarily from

renewable energy generated outside Massachusetts, as shown in paragraph 32 above.

41.    TransCanada is a retail electric supplier subject to the requirements of ch. 25A,

§ 11F and 225 C.M.R. 14.00.  It is required to purchase Solar RECs from generators located in

Massachusetts.  If it does not purchase a large enough number of Solar RECs from generators

located in Massachusetts, then it will be required to make Alternative Compliance Payments at

the amount set in 225 C.M.R. 14.05(e) and 225 C.M.R. 14.08(3)(b)(2).  Under the regulations as

currently proposed, with respect to retail supply contracts that had already been entered before

implementation of the Solar Carve-Out, the amount of the Alternative Compliance Payment is

set at $325 per MWh.  See Proposed Amended Regulations 225 C.M.R. 14.08(3)(b)(3).

42.    Were it not for the discrimination in favor of Massachusetts generation units,

Solar RECs would develop in a broader geographic area -- as RECs have developed under the

existing REC program -- and they would reach reasonable price points more quickly.  As a

result, TransCanada would be able to purchase Solar RECs from generation units located outside

the Commonwealth at a price substantially below $325 per MWh.

43.    Moreover, if electricity suppliers were permitted to purchase Solar RECs outside

Massachusetts, as they do now in the existing REC program, it would be much easier to find a

sufficient number of Solar RECs available for purchase at a reasonable price.  Thus it would be

much less likely that TransCanada and other retail electricity suppliers would be forced to make

expensive Alternative Compliance Payments.

44.    TransCanada submitted comments to DOER on March 9, 2010, noting that

participation in the Solar REC program should not be limited to Massachusetts generators.

There is no remaining feasible administrative remedy by which TransCanada may seek relief from the constitutional violations in ch. 25A, § 11F and in the regulations at 225 C.M.R. 14.00 et seq.

45.     As stated in the governing case law (see paragraph 11 above), the Commerce Clause of the U.S. Constitution forbids Massachusetts from adopting differential treatment that favors in-state generators and disfavors out-of-state generators. The Solar Carve-Out discriminates on its face, and no legitimate purpose is served by the discriminatory requirement. Therefore it violates the Commerce Clause.

(a)     In part the Legislature's stated objective is to encourage the development of renewable and alternative energy. This objective is not served by, and does not justify, discriminating against out-of-state generators.

(b)     In part the Legislature's stated objective is to provide for energy efficiency. This objective is not served by, and does not justify, discriminating against out-of-state generators.

(c)     In part the Legislature's stated objective is to promote environmental benefits. This objective is not served by, and does not justify, discriminating against out-of-state generators. The environmental benefits of the Solar Carve-Out program will be experienced in every location that is affected by traditional power plants generating power for the power grid operated by ISO New England. By comparison, the existing REC program, which serves the same environmental objective, is not limited to Massachusetts generators.

(d)     DOER has announced that another central objective of the Solar Carve-Out is to enhance the financing of generation units that are located in Massachusetts. See

DOER press release "Patrick-Murray Administration Announces Next Phase of Solar Power Support," dated Dec. 29, 2009 (proclaiming that it is "an important and sustainable part of building predictable market support for the solar industry in Massachusetts") (emphasis added).  The differential treatment contained in the Solar Carve-Out is expressly aimed to favor producers within Massachusetts and to disfavor producers outside Massachusetts.  This objective is forbidden under the Commerce Clause of the U.S. Constitution.

46.     Finally, and in the absence of a Massachusetts restriction, DOER also may not fashion an alternative restriction by improperly combining Section 14.05(4)(a) and Section 14.05(1)(d)(2) (of the regulations at 225 C.M.R.) so as to restrict Solar generation units to the ISO New England control area.  The second sentence in 225 C.M.R. 14.05(4)(a) requires that a generation unit participating in the Solar Carve-Out must be wired in a particular manner, as follows:

> On-site use includes any new or existing load located at the site of the Unit including any parasitic load that may result from the installation of the Unit, and that is wired to receive a portion of the electrical energy to output from the Unit before the balance of such output passes through the Unit's material interconnection onto the electric grid.

In turn, Section 14.05(1)(d)(2), titled "Behind the meter Generation," requires that:  "If the Generation Unit is wired to the electrical system on the End Use Customer's side of a retail electrical meter, such Unit must be located within the ISO-NE Control Area."  (Emphasis added.)  It is not clear whether DOER will assert that every generation unit in the Solar Carve-Out program must qualify under Section 14.05(4)(a) and must also comply with Section 14.05(1)(d)(2), and it is not clear whether DOER will thereby require that all generation units in the Solar Carve-Out program must be located within the ISO New England control area.  Such a

restriction would not be justified and would not be constitutional.  By comparison, the existing

REC program recognizes that a qualifying generation unit may be located in an adjacent control

area, so long as it generates power for delivery into the ISO New England control area.  <u>See</u> 225

C.M.R. 14.05(5).  The legitimate objectives of the Solar Carve-Out program are similar to the

legitimate objectives of the existing REC program.  These objectives could be met by generation

units that are located in a control area adjacent to the ISO New England control area.  If DOER

were to exclude generation units that are located in an adjacent control area, such an application

of the regulations would be discriminatory and would lack justification, and would therefore

violate the Commerce Clause.

<u>**HARM TO THE PLAINTIFF AND TO THE PUBLIC**</u>

47.     TransCanada is being harmed, and will continue to be harmed, by the

discriminatory features of the Long-Term Renewable Energy Contract program and the Solar

Carve-Out program.

48.     The public is also being harmed, and will continue to be harmed, by the

discriminatory features of the Long-Term Renewable Energy Contract program and the Solar

Carve-Out program.

I.     <u>LONG-TERM RENEWABLE ENERGY CONTRACT PROGRAM</u>

49.     TransCanada and its corporate affiliates are among the significant developers and

producers of renewable energy in North America.  Were it not for discrimination against out-of-

state producers of renewable energy, TransCanada would compete for long-term contracts,

required by Section 83, to provide renewable energy to Massachusetts from the Kibby Wind

Power Project and from other sources outside Massachusetts.  TransCanada is being deprived of

the opportunity to compete for these required long-term contracts, to develop customer relationships, and to promote the success of its renewable energy business.

50.     TransCanada is suffering irreparable harm, which cannot be redressed by an award of damages, because it is being denied the ability to compete for a uniquely important business opportunity.

51.     Once the long-term contracts have been awarded to Massachusetts generators, TransCanada will also suffer damages.

52.     The discriminatory requirement in the Long-Term Renewable Energy Contract program will harm the public. The dollars paid by Massachusetts businesses and consumers will be artificially diverted away from efficient out-of-state generators, and will be artificially diverted toward inefficient Massachusetts-based generators. This diversion will increase prices, reduce renewable production, and slow the purchasing public's adoption of renewable energy.

II.     SOLAR CARVE-OUT PROGRAM

53.     TransCanada is a retail electricity supplier in Massachusetts. Were it not for the discrimination against out-of-state generators in the Solar Carve-Out program, solar generation would develop more fully over a geographic area broader than Massachusetts, as renewable energy generation has developed under the existing REC program. This would lead to a greater quantity of eligible production, lower prices for solar power, and lower prices for Solar RECs. Were it not for the discriminatory requirement, TransCanada would purchase Solar RECs at lower prices from out-of-state generators -- both this year and in the future as the broader market develops -- which would obviate the need for TransCanada to purchase Solar RECs at high prices from Massachusetts generators, or else to make expensive Alternative Compliance Payments.

54.     The discriminatory requirement of the Solar Carve-Out prevents the development of an efficient market for Solar RECs.  TransCanada is being deprived of the benefits of an efficient market, and is being deprived of the opportunity to develop relationships with current and future out-of-state generators.  Thus TransCanada is suffering irreparable harm, which cannot be redressed by an award of damages.  If the market for Solar RECs is not allowed to develop efficiently, as stated above, in the future it may be difficult to specify exactly what should have been the lower price level in an efficient market for Solar RECs.

55.     TransCanada will suffer damages including, but not limited to, the added payments that it will be required to make under the unconstitutional Solar Carve-Out program -- above and beyond its required payments under the existing REC program -- which may include both artificially high prices for Solar RECs and also Alternative Compliance Payments.

56.     The discriminatory requirement in the Solar Carve-Out program will harm the public.  The dollars paid by Massachusetts businesses and consumers will be artificially diverted away from more efficient out-of-state generators, and will be artificially diverted toward less efficient Massachusetts-based generators.  This diversion will add a substantial increase to the cost of the Solar Carve-Out, both for retail electricity suppliers and for the buying public. Massachusetts businesses and customers will be forced to bear these increased costs when they pay their electricity bills.  This will make it more costly to live and work in Massachusetts, and will slow the development of an efficient market for solar energy.

III.    SUMMARY

57.     If other states act like Massachusetts, by favoring their own energy producers and discriminating against energy producers in other states, then the consumers and businesses of the United States will not get the benefit of efficient renewable energy production.  Businesses and

consumers will be forced to pay a higher price than they would need to pay for efficient production of renewable energy. As a result of artificially high prices, the purchasing public will be slower to adopt renewable energy. This contravenes the legitimate legislative objectives for renewable energy programs. The legislatures that have adopted renewable energy programs have identified certain public policy objectives, including reducing pollution and ameliorating the emission of greenhouse gases. These objectives will be frustrated if Massachusetts and other states discriminate against out-of-state producers.

## COUNTS

### Count One
**(Long-Term Renewable Energy Contract Program -- Declaratory Judgment)**

58.     TransCanada incorporates by reference paragraphs 1-57 above.

59.     Section 83 of the Green Communities Act violates the Commerce Clause of the U.S. Constitution because it discriminates in favor of renewable energy generators located within the Commonwealth of Massachusetts.

60.     The regulations at 220 C.M.R. 17.00 et seq. violate the Commerce Clause of the U.S. Constitution for the same reason.

61.     The Court should enter a judgment declaring that Section 83 and the regulations at 220 C.M.R. 17.00 et seq. are unconstitutional, invalid and unenforceable to the extent they require entering contracts with generators located in Massachusetts (to the exclusion of generators located outside Massachusetts).

### Count Two
**(Long-Term Renewable Energy Contract Program -- Injunctive Relief)**

62.     TransCanada incorporates by reference paragraphs 1-61 above.

63.    The RFP, issued by DOER on January 15, 2010, violates the Commerce Clause of the U.S. Constitution by discriminating in favor of renewable energy generators located in the Commonwealth of Massachusetts.

64.    The Court should enter a preliminary injunction and a permanent injunction ordering that the Defendants (A) shall not enforce the provisions of Section 83 and the regulations at 220 C.M.R. 17.00 et seq. to the extent they provide that certain long-term contracts must be entered with producers located in Massachusetts (to the exclusion of generators located outside Massachusetts);  (B) shall not proceed with the RFP issued on January 15, 2010;  and (C) in connection with any private or public solicitation for long-term renewable energy contracts, (i) shall not fail to recognize and consider competitive bids from TransCanada and other generators that are located outside Massachusetts, (ii) shall refrain from any discrimination in favor of Massachusetts-based generators, (iii) shall not approve any long-term contract with a Massachusetts-based generator unless an affirmative determination is made that the contract solicitation was open to competing offers from out-of-state generators on a non-discriminatory basis, and (iv) shall not provide for, facilitate or approve a 4% remuneration (pursuant to Section 83 and/or 220 C.M.R. 17.07) or any other remuneration for the contracting distribution company unless an affirmative determination is made that the contract pricing is competitive with offerings of out-of-state generators and that the solicitation was open to competition from out-of-state generators on a non-discriminatory basis.

Count Three<br>(Solar Carve-Out -- Declaratory Judgment)

65.    TransCanada incorporates by reference paragraphs 1-64 above.

66.     Massachusetts General Laws ch. 25A, § 11F and the regulations at 225 C.M.R. 14.00 et seq. violate the Commerce Clause of the Constitution by discriminating in favor of solar energy generators located within the Commonwealth of Massachusetts.

67.     The Court should enter a judgment declaring that Massachusetts General Laws ch. 25A, § 11F and the regulations at 225 C.M.R. 14.00 et seq. (including the price mechanism sections at 225 C.M.R. 14.05(4)(c) - (h) and all other portions of these regulations) are unconstitutional, invalid and unenforceable to the extent they provide that (or rest on the assumption that) retail electricity suppliers must purchase Solar Renewable Energy Certificates from generation units located in Massachusetts (to the exclusion of generation units located outside Massachusetts) and, if they fail to do so, must tender an Alternative Compliance Payment.

68.     The Court should enter a judgment declaring that the regulations at 225 C.M.R. 14.00 et seq. are unconstitutional, invalid and unenforceable to the extent they may be interpreted to provide that retail electrical suppliers must purchase Solar Renewable Energy Certificates from generators that are located within the ISO New England control area (to the exclusion of generators that are located in an adjacent control area).

Count Four
(Solar Carve-Out -- Injunctive Relief)

69.     TransCanada incorporates by reference paragraphs 1-68 above.

70.     The Court should issue a preliminary injunction and a permanent injunction ordering that the Defendants shall not enforce Massachusetts General Laws ch. 25A, § 11F and the regulations at 225 C.M.R. 14.00 et seq. (including the price mechanism sections at 225 C.M.R. 14.05(4)(c) - (h) and all other portions of these regulations) insofar as they provide that (or rest on the assumption that) retail electricity suppliers must purchase Solar Renewable

Energy Certificates from generation units located in Massachusetts (to the exclusion of

generation units located outside Massachusetts); and (B) in connection with any solar renewable

energy program, shall not fail to recognize Solar Renewable Energy Certificates from any

generation unit, regardless of whether the generation unit is located inside Massachusetts or

outside Massachusetts (and regardless of whether the generation unit is located within the ISO

New England control area or outside the ISO New England control area), so long as the

generation unit meets the other requirements of applicable regulations and is verified by the

NEPOOL Generation Information System.

Count Five
(Long-Term Renewable Energy Contract Program -- Damages Under 42 U.S.C. §1983)

71.     TransCanada incorporates by reference paragraphs 1-70 above.

72.     Under color of law, by issuing the RFP dated January 15, 2010 and by other

actions, the Defendants are applying Section 83 of the Massachusetts Green Communities Act

and the regulations at 220 C.M.R. 17.00 et seq. in such a manner as to deprive TransCanada of

rights or privileges secured by the United States Constitution, in that they are discriminating

against TransCanada and other out-of-state producers.

73.     A reasonable person in the position of the Defendants would know that this

discrimination violates the Commerce Clause of the U.S. Constitution.

74.     TransCanada has been harmed, and will be harmed, by the aforesaid violations of

the Commerce Clause of the U.S. Constitution.  TransCanada is entitled to recover damages and

its attorney's fees under 42 U.S.C. §§ 1983 and 1988.

Count Six
(Solar Carve-Out -- Damages Under 42 U.S.C. §1983)

75.     TransCanada incorporates by reference paragraphs 1-74 above.

76.    Under color of law, the Defendants are applying Massachusetts General Laws ch. 25A, § 11F and the regulations at 225 C.M.R. 14.00 et seq. in such a manner as to deprive TransCanada of rights or privileges that are secured by the United States Constitution, in that they are discriminating against out-of-state producers.

77.    A reasonable person in the position of the Defendants would know that this discrimination violates the Commerce Clause of the U.S. Constitution.

78.    TransCanada has been harmed, and will be harmed, by the aforesaid violation of the Commerce Clause of the U.S. Constitution.  TransCanada is entitled to recover damages and its attorney's fees under 42 U.S.C. §§ 1983 and 1988.

## PRAYERS FOR RELIEF

WHEREFORE, TransCanada respectfully requests the following relief:

(I)    Judgment declaring that Section 83 of the Green Communities Act and the regulations at 220 C.M.R. 17.00 et seq. are unconstitutional, invalid and unenforceable to the extent they provide that certain long-term contracts for renewable energy must be entered with generators located in Massachusetts (to the exclusion of generators located outside Massachusetts).

(II)    A preliminary injunction and a permanent injunction that:

(A) The Defendants shall not enforce Section 83 of the Green Communities Act and the regulations at 220 C.M.R. 17.00 et seq., to the extent they provide that certain long-term contracts for renewable energy must be entered with generators located in Massachusetts (to the exclusion of generators located in other states);

(B) The Defendants shall not proceed with the Request For Proposals that was issued on January 15, 2010 calling for bids from Massachusetts generators on long-term contracts for renewable energy; and

(C) In connection with any private or public solicitation for long-term renewable energy contracts, the Defendants (i) shall not fail to recognize and consider competitive bids from TransCanada and other energy generators that are located outside the Commonwealth of Massachusetts, (ii) shall not in any manner discriminate in favor of Massachusetts-based generators, (iii) shall not approve any long-term contract with a Massachusetts-based generator unless an affirmative determination is made that the contract solicitation was open to competing offers from out-of-state generators on a non-discriminatory basis, and (iv) shall not provide for, facilitate or approve a 4% remuneration (pursuant to Section 83 and/or 220 C.M.R. 17.07) or any other remuneration for the contracting distribution company unless an affirmative determination is made that the contract pricing is competitive with offerings of out-of-state generators and that the solicitation was open to competition from out-of-state generators on a non-discriminatory basis.

(III)   Judgment declaring that:

(A) Massachusetts General Laws ch. 25A, § 11F and the regulations at 225 C.M.R 14.00 et seq. (including the price mechanism sections at 225 C.M.R. 14.05(4)(c) - (h) and all other portions of these regulations) are unconstitutional, invalid and unenforceable to the extent they provide that (or rest on the assumption that) retail electricity suppliers must purchase Solar Renewable Energy Certificates from generation units located in Massachusetts (to the exclusion of generation units located outside

Massachusetts) and, if they fail to do so, must tender an Alternative Compliance Payment; and

(B) The regulations at 225 C.M.R. 14.00 et seq. are unconstitutional, invalid and unenforceable to the extent they maybe interpreted to provide that retail electrical suppliers must purchase Solar Renewable Energy Certificates from generation units that are located within the ISO New England control area (to the exclusion of generation units that are located outside the ISO New England control area).

(IV)    A preliminary injunction and a permanent injunction that:

(A) The Defendants shall not enforce Massachusetts General Laws ch. 25A, § 11F and the regulations at 225 C.M.R 14.00 et seq. (i) insofar as they provide that retail electricity suppliers must purchase Solar Renewable Energy Certificates from generation units located in Massachusetts (to the exclusion of generation units located outside Massachusetts) and, if they fail to do so, must tender an Alternative Compliance Payment;  and  (ii) insofar as they provide that retail electricity suppliers must purchase Solar Renewable Energy Certificates from generation units located within the ISO New England control area (to the exclusion of generation units located in adjacent control areas) and, if they fail to do so, must tender an Alternative Compliance Payment; and

(B) In connection with any program establishing Solar Renewable Energy Certificates, pursuant to Massachusetts General Laws ch. 25A, § 11F, the Defendants shall not fail to recognize Solar Renewable Energy Certificates from any qualified generation units, regardless of whether they are located inside Massachusetts or outside Massachusetts (and regardless of whether they are located within the ISO New England control area or outside the ISO New England control area), so long as they meet the other

requirements stated in applicable regulations and are verified by the NEPOOL

Generation Information System.

(V)     On Count V, judgment in an amount to be proved at trial, along with interest and

attorney's fees, pursuant to 42 U.S.C. §§ 1983 and 1988.

(VI)    On Count VI, judgment in an amount to be proved at trial, along with interest and

attorney's fees, pursuant to 42 U.S.C. §§ 1983 and 1988.

(VII)   Such other and further relief as the Court deems just and proper.


TRANSCANADA POWER MARKETING LTD.

By its attorneys,


*/s/ Robert M. Buchanan, Jr.*
Robert M. Buchanan, Jr. (BBO# 545910)
    rbuchanan@choate.com
Daniel C. Winston (BBO# 562209)
    dwinston@choate.com
Brian C. Barry (BBO# 661518)
    bbarry@choate.com
Nellie E. Staley (BBO# 676886)
    nstaley@choate.com
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA  02110
617-248-5000

Dated:  April 16, 2010