UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

|  |  |  |
|---|---|---|
| TRANSCANADA POWER MARKETING LTD., <br><br> Plaintiff, <br><br> v. <br><br> IAN A. BOWLES, in his official capacity as Secretary of the Massachusetts Executive Office of Energy and Environmental Affairs; PHILIP GIUDICE, in his official capacity as Commissioner of the Massachusetts Department of Energy Resources; PAUL J. HIBBARD, in his official capacity as Chairman of the Massachusetts Department of Public Utilities; and TIM WOOLF and JOLETTE A. WESTBROOK, in their official capacities as Commissioners of the Massachusetts Department of Public Utilities, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 4:10-cv-40070-FDS |

## MEMORANDUM OF LAW IN SUPPORT OF
## TRANSCANADA'S MOTION FOR A PRELIMINARY INJUNCTION

TRANSCANADA POWER
MARKETING LTD.,

By its attorneys,

Robert M. Buchanan, Jr. (BBO# 545910)
   rbuchanan@choate.com
Daniel C. Winston (BBO# 562209)
   dwinston@choate.com
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA  02110
617-248-5000

Dated:  June 1, 2010

4659774v5

## TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................1

BACKGROUND ..................................................................................................................1

    A.    Until The Recent Enactment Of Section 83, Massachusetts Has
Successfully Supported Renewable Energy Without Discrimination. .................1

    B.    TransCanada And Its Complaint....................................................................2

    C.    The Defendants. ............................................................................................3

    D.    The Parties Have Executed A Partial Settlement, Which Narrows The
Issues Before The Court.................................................................................4

THE STANDARD FOR ENTERING A PRELIMINARY INJUNCTION ...................................5

ARGUMENT .......................................................................................................................5

I.    THE COMMERCE CLAUSE FORBIDS DISCRIMINATION BASED ON PLACE
OF ORIGIN. ..................................................................................................................5

II.    THE LONG-TERM RENEWABLE ENERGY CONTRACT PROGRAM VIOLATES
THE COMMERCE CLAUSE.  DISCRIMINATION IN THE RFP SHOULD BE
ENJOINED. ....................................................................................................................7

    A.    TransCanada Is Likely To Succeed On The Merits...........................................8

        1.    Section 83 Discriminates On Its Face.........................................8

        2.    Section 83's Discriminatory Requirement Violates The Commerce
Clause....................................................................................11

    B.    TransCanada Is Likely To Suffer Irreparable Harm. ..............................................12

    C.    The Balance Of Harms Favors Entering A Preliminary Injunction.......................13

    D.    An Injunction Is In The Public Interest...............................................................15

III.    AN INJUNCTION SHOULD BE ENTERED IN THE FORM ATTACHED TO
TRANSCANADA'S MOTION.........................................................................................16

CONCLUSION...................................................................................................................18

# TABLE OF AUTHORITIES

CASES

Abel Converting, Inc. v. United States,
    679 F. Supp. 1133 (D.D.C. 1988) ............................................................................15

C & A Carbone v. Town of Clarkstown,
    511 U.S. 383 (1994) ......................................................................................................6

Camps Newfound/Owatonna, Inc. v. Town of Harrison,
    520 U.S. 564 (1997) ................................................................................................6, 11

City of Philadelphia v. New Jersey,
    437 U.S. 617 (1978) ......................................................................................................6

CMM Cable Rep. v. Ocean Coast Properties,
    48 F.3d 618 (1st Cir. 1995) ..........................................................................................5

Dennis v. Higgins,
    498 U.S. 439 (1991) ......................................................................................................4

Family Winemakers of California v. Jenkins,
    592 F.3d 1 (1st Cir. 2010) ......................................................................................6, 11

Granholm v. Heald,
    544 U.S. 460 (2005) ....................................................................................................11

Houlton Citizens' Coal. v. Town of Houlton,
    175 F.3d 178 (1st Cir. 1999) ......................................................................................11

Hyde Park Partners v. Connolly,
    839 F.2d 837 (1st Cir. 1988) ................................................................................13, 16

Kassel v. Consol. Freightways Corp.,
    450 U.S. 662 (1981) ....................................................................................................16

Miss. Power & Light Co. v. Miss. *ex rel.* Moore,
    487 U.S. 354 (1988) ......................................................................................................6

Mississippi Power & Light Co. v. United Gas Pipe Line Co.,
    760 F.2d 618 (5th Cir. 1985) ......................................................................................15

Morgan Stanley Capital Group v. Pub. Util. Dist. No. 1 of Snohomish County Wash.,
    128 S.Ct. 2733 (2008) ..................................................................................................6

New England Power Co. v. New Hampshire,
    455 U.S. 331 (1982) ......................................................................................................6

O'Donnell Constr. Co. v. District of Columbia,
 963 F.2d 420 (D.C. Cir. 1992) .................................................................13

O'Neill v. Baker,
 210 F.3d 41 (1st Cir. 2000) ......................................................................4

Rio Grande Cmty. Health Ctr. v. Rullan,
 397 F.3d 56 (1st Cir. 2005) ......................................................................5

Starlight Sugar, Inc. v. Soto,
 909 F. Supp. 853 (D.P.R. 1995), aff'd, 114 F.3d 330 (1st Cir. 1997) ...........5, 13, 15

Waldron v. George Weston Bakeries,
 570 F.3d 5 (1st Cir. 2009) ........................................................................5

West Lynn Creamery, Inc. v. Healy,
 512 U.S. 186 (1994) .................................................................................12

Winter v. NRDC,
 129 S. Ct. 365 (2008) ...............................................................................5

Wyoming v. Oklahoma,
 502 U.S. 437 (1992) .................................................................................12


**STATUTES**

Green Communities Act, St. 2008, ch. 169 ..............................................Passim

Mass. Gen. L. ch. 25A, § 11F(a)-(b) .....................................................2, 16


**OTHER AUTHORITIES**

220 C.M.R. 17.00.................................................................................9-10, 17

225 C.M.R. 14.07(1) ..................................................................................2

225 C.M.R. 18.00.....................................................................................9-10

Commerce Clause of the U.S. Constitution .............................................Passim

## INTRODUCTION

TransCanada Power Marketing Ltd. ("TransCanada") seeks injunctive relief on Count II of its Complaint to avert unconstitutional discrimination in a recently-enacted Massachusetts energy regulatory program, which mandates long-term contracts for renewable energy ("the Long-Term Renewable Energy Contract program"). Chartered by Section 83 of the Green Communities Act ("Section 83") and implemented by the Defendants, this program discriminates on its face: it mandates that electric distribution companies must solicit and enter contracts for renewable energy generation, but it stipulates that the generators must be located "within the jurisdictional boundaries of the commonwealth." Discrimination of this nature is forbidden by the Commerce Clause of the U.S. Constitution and a long line of court precedent. Currently the Defendants are coordinating a process to solicit contracts via a Request For Proposals ("RFP"). A preliminary injunction is needed to avert discrimination in the RFP. The public will benefit if TransCanada and other out-of-state generators are given an opportunity to offer what may be substantially lower prices in response to the RFP. The injunction sought is surgically limited, reserving any further action for a later time if necessary. The Court should enter a preliminary injunction, in the form attached to TransCanada's Motion, in order to preserve the status quo and to protect TransCanada -- and the public -- against irreparable harm.

## BACKGROUND

TransCanada's Motion For A Preliminary Injunction ("Motion") is supported by the Affidavit of Michael Hachey ("Hachey Aff.") and its attached Exhibits A through N.

A.   Until The Recent Enactment Of Section 83, Massachusetts Has Successfully Supported Renewable Energy Without Discrimination.

The great majority of electrical energy produced and distributed in the United States derives from fuels that are not renewable, principally coal, natural gas and nuclear. Hachey Aff.

at ¶ 8.  For several years, Massachusetts has had in place a successful program to encourage

renewable energy, Mass. Gen. L. ch. 25A, § 11F(a)-(b) (see Hachey Aff., Ex. A), which was

enacted as part of the Electric Utility Restructuring Act.  Under this established program,

currently, retail electricity suppliers must obtain 5% of their power from renewable energy

sources.  Hachey Aff., at ¶ 10 and Ex. B; 225 C.M.R. 14.07(1).  They are free to purchase

renewable energy from the most efficient sources, whether those sources generate their energy

in-state or out-of-state.[1]

The existing program does not discriminate against out-of-state generators.  The

Massachusetts Department of Energy Resources has declared that the existing program is a

success.  Hachey Aff., Ex. C, page 7.  Much of its success derives from power generated outside

Massachusetts.  Id. at pages 3, 10, 18-23.

B.   TransCanada And Its Complaint.

Relying on this existing non-discriminatory program and on the well-established ability

to market energy in Massachusetts and in other states, TransCanada's corporate affiliates

invested $300 million to develop the Kibby Wind Farm project in Maine.  Hachey Aff. at ¶ 12.

TransCanada is a power marketing company with its principal place of business in Westborough,

Massachusetts.  Id. at ¶ 3.  It purchases electricity from generation sources, including a variety of

power plants, and resells that electricity to distribution companies and to retail customers

throughout the northeastern United States.  Its corporate parent and sister companies generate

---

[1]  More than 35 states have enacted various kinds of renewable energy programs.  A majority of these have enacted
requirements that retailers of electric power must obtain a certain percentage of their power each year from
renewable energy sources.  To our knowledge, no court yet has addressed discrimination against interstate
commerce of the type enacted by Massachusetts in the Long-Term Renewable Energy Contract program.
Renewable energy sources recognized in Mass. Gen. L. ch. 25A, § 11F(b) include: solar photovoltaic and solar
thermal electric energy; wind energy; ocean thermal, wave and tidal energy; fuel cells utilizing renewable fuels;
landfill gas; waste-to-energy; certain hydroelectric energy; naturally flowing water and hydrokinetic energy; low
emission advanced biomass power conversion technologies; and geothermal energy.

power in various locations, primarily outside Massachusetts, including Maine, New Hampshire, Vermont, Rhode Island, New York, Arizona and Canada.

TransCanada Maine Wind Development, Inc. developed the Kibby Wind Farm along Kibby Mountain and Kibby Range in the Boundary Mountains of Maine. The Kibby Wind Farm's first phase is already constructed and became operational in October 2009, amply meeting the date requirement stated expressly in Section 83. See page 8 below. The Kibby Wind Farm is capable of providing a significant volume of its renewable energy to Massachusetts. Indeed, TransCanada has entered one contract delivering to Massachusetts customers a portion of the Wind Farm output. Hachey Aff. at ¶ 6. TransCanada wishes to market in interstate commerce to customers in Massachusetts the remaining portion of this wind-produced electric energy. TransCanada has been barred, however, from bidding on the contracts required by the Long-Term Renewable Energy Contract program. Id. at ¶ 21; see pages 8-10 below.

TransCanada filed its Complaint on April 16, 2010, seeking redress from unconstitutional discrimination in two Massachusetts energy regulatory programs. Counts I, II and V address the Long-Term Renewable Energy Contract program (see paras. 58-64, 71-74 of the Complaint), and Counts III, IV and VI address the Solar Carve-Out (see paras. 65-70, 75-78 of the Complaint).

C.     The Defendants.

The Complaint names as Defendants the Massachusetts officials principally responsible for designing and implementing the discriminatory Long-Term Renewable Energy Contract program:  (1) Ian A. Bowles, Secretary of the Executive Office of Energy and Environmental Affairs; (2) Philip Giudice, Commissioner of the Department of Energy Resources ("DOER"); (3) Paul J. Hibbard, Chairman of the Department of Public Utilities ("DPU"); (4) Tim Woolf, Commissioner of DPU; and (5) Jolette A. Westbrook, Commissioner of DPU. In order to effect

injunctive relief, it is necessary and sufficient to name these Defendants in their official capacities. See, e.g., O'Neill v. Baker, 210 F.3d 41, 47 (1st Cir. 2000).

> D.   The Parties Have Executed A Partial Settlement, Which Narrows The Issues Before The Court.

From April 23 to May 28, TransCanada has been engaged in settlement discussions, which have succeeded in narrowing the issues before this Court. On May 28, the parties executed an agreement to settle TransCanada's claims concerning the Solar Carve-Out, i.e. Counts III, IV and VI of the Complaint. Pursuant to the parties' Partial Settlement Agreement, TransCanada has also agreed that within a few days (after the Defendants take certain steps) it will dismiss Count V without prejudice.[2]

After the Partial Settlement Agreement has been implemented, the remaining counts before this Court will be Counts I and II, which seek declaratory relief and injunctive relief against discrimination in the Long-Term Renewable Energy Contract program. As explained on pages 9-11 below, this program involves both a state-coordinated industry solicitation process, and also bilateral private contract negotiations. TransCanada seeks a surgical injunction, which is designed to reopen the state-sponsored RFP process so that TransCanada (and other out-of-state generators) may submit bids. TransCanada hopes that this limited intervention will suffice to prevent the immediate harm from discrimination in the program. If events develop in such a

---

[2] TransCanada brought suit under Section 1983 to recover damages in the event that injunctive relief does not fully prevent the Constitutional violations alleged in the Complaint. See Dennis v. Higgins, 498 U.S. 439, 451 (1991) (plaintiff may seek damages under Section 1983 for violation of the Commerce Clause). The Section 1983 damages claims, Counts V-VI, were brought against the five Defendants in their individual capacities. See O'Neill v. Baker, supra (Section 1983 suit for damages may be brought against state officials in their individual capacities). The parties have addressed these claims in their Partial Settlement Agreement. TransCanada has agreed to file three notices of partial dismissal. The first is being filed on June 1, and the other two will be filed after the Defendants take certain steps provided in the Partial Settlement Agreement. Within a few days, we anticipate, Count V will be dismissed without prejudice as to all Defendants, and Count VI will be dismissed without prejudice as to the first two defendants. As to the other three defendants, Count VI has been dismissed with prejudice today. TransCanada has adjusted the caption of its Motion to reflect these concurrent and anticipated dismissals.

fashion that this limited intervention is not sufficient, then TransCanada reserves the right to seek further relief in the future.

## THE STANDARD FOR ENTERING A PRELIMINARY INJUNCTION

> Traditionally, the test for a preliminary injunction has four factors: 1) a likelihood of success on the merits, 2) irreparable harm to the plaintiff should preliminary relief not be granted, 3) whether the harm to the defendant from granting the preliminary relief exceeds the harm to the plaintiff from denying it, and 4) the effect of the preliminary injunction on the public interest.

Rio Grande Cmty. Health Ctr. v. Rullan, 397 F.3d 56, 75 (1st Cir. 2005). Accord, Winter v. NRDC, 129 S. Ct. 365, 374 (2008). See also Starlight Sugar, Inc. v. Soto, 114 F.3d 330, 331 (1st Cir. 1997) (injunction against violation of the Commerce Clause). "The first factor -- likelihood of success -- normally will weigh the heaviest in this four-part decisional calculus." Waldron v. George Weston Bakeries, 570 F.3d 5, 9 (1st Cir. 2009). "The purpose of a preliminary injunction is to preserve the status quo, freezing an existing situation....." CMM Cable Rep. v. Ocean Coast Properties, 48 F.3d 618, 620 (1st Cir. 1995).

## ARGUMENT

## I.    THE COMMERCE CLAUSE FORBIDS DISCRIMINATION BASED ON PLACE OF ORIGIN.

Earlier this year, the First Circuit Court of Appeals summarized the governing standards of law under the Commerce Clause of the United States Constitution:

> The Commerce Clause prevents states from creating protectionist barriers to interstate trade.... Discrimination under the Commerce Clause means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter, as opposed to state laws that regulate evenhandedly with only incidental effects on interstate commerce.... [A] discriminatory law is virtually per se invalid ... and will survive only if it advances a legitimate local purpose that cannot be adequately served by reasonable non-discriminatory alternatives.... The state bears the burden of showing legitimate local purposes and the lack

of non-discriminatory alternatives, and discriminatory state laws
rarely satisfy this exacting standard.

Family Winemakers of California v. Jenkins, 592 F.3d 1, 9 (1st Cir. 2010) (internal citations and

quotations omitted) (emphasis added).  Even where the state claims an environmental purpose,

this does not justify a regulation that is discriminatory based on the point-of-origin of the

regulated commerce.  C & A Carbone v. Town of Clarkstown, 511 U.S. 383, 393 (1994); City of

Philadelphia v. New Jersey, 437 U.S. 617, 625-57 (1978).  State laws favoring in-state producers

contravene the founding principles of the United States and harm the general public.  See Camps

Newfound/Owatonna, Inc. v. Town of Harrison, 520 U.S. 564, 578 (1997); see also C & A

Carbone, 511 U.S. at 390 ("The central rationale for the rule against discrimination is to prohibit

state or municipal laws whose object is local economic protectionism, laws that would excite

those jealousies and retaliatory measures the Constitution was designed to prevent.").

In New England Power Co. v. New Hampshire, 455 U.S. 331, 338-40 (1982), the

Supreme Court held that to restrict the flow of privately owned and produced electricity in

interstate commerce is forbidden by the Commerce Clause.  The Commerce Clause precludes

any state from restricting the flow of power based on place of origin.  Id.  The Supreme Court

has similarly held on many other occasions that the states have no role to impede the flow of

electricity in interstate commerce.  See, e.g., Morgan Stanley Capital Group v. Pub. Util. Dist.

No. 1 of Snohomish County Wash., 128 S.Ct. 2733, 2737-38 (2008); Miss. Power & Light Co. v.

Miss. ex rel. Moore, 487 U.S. 354, 371 (1988).

The principle of unrestricted free trade, established by the Commerce Clause, is well-

known among energy regulators such as the Defendants.  For example, the same type of

restriction at issue here was addressed in a publication prepared for the National Association of

Regulatory Utility Commissioners, titled "The Renewables Portfolio Standard: A Practical

Guide":

> Some states have limited renewable resource eligibility to
> production from generation facilities located within the state.
> Absent a significant change in Supreme Court application of the
> Commerce Clause of the U.S. Constitution, the restriction to in-
> state generation will, if challenged, be found unconstitutional. The
> courts have continually found that facial discrimination by a state
> against out-of-state resources is 'virtually *per se* invalid.'
> *Philadelphia v. New Jersey*, 437 U.S. 617, 624 (invalidating New
> Jersey's ban on imports of out-of-state garbage). The exclusion of
> out-of-state generation is sufficiently similar to court precedents to
> expect invalidation....

Hachey Aff., Ex. E, page A-1 (emphasis added).

## II.  THE LONG-TERM RENEWABLE ENERGY CONTRACT PROGRAM VIOLATES THE COMMERCE CLAUSE.  DISCRIMINATION IN THE RFP SHOULD BE ENJOINED.

Notwithstanding these clear legal rules, the Massachusetts Long-Term Renewable Energy

Contract program discriminates on its face against out-of-state producers. The Defendants are

currently taking steps to implement the discriminatory feature of this program. Once

implemented, this feature will cause irreparable harm to TransCanada and will deprive the public

of an efficient market for renewable energy. The discrimination at issue will increase the costs

of renewable power by curtailing interstate competition and commerce, and the increased cost

will be passed on entirely to the retail customers of electric power in Massachusetts. The public

has little idea that this is happening, and will not see the increased costs in electric bills until

2011 and thereafter. By then discriminatory long-term contracts will be in place, and it will be

very difficult to reverse these contracts. There is no rationale for allowing this situation to be

created. An injunction should be entered to preserve the status quo.

A.   <u>TransCanada Is Likely To Succeed On The Merits.</u>

1.   <u>Section 83 Discriminates On Its Face.</u>

The Long-Term Renewable Energy Contract program was chartered in 2008, when the Massachusetts Legislature enacted the Green Communities Act.  St. 2008, ch. 169; Hachey Aff., Ex. F.

<u>Section 83</u>.  Section 83 of this Act requires regulated electric distribution companies to solicit and to enter long-term contracts for renewable energy.  A long-term contract is the best way to assure revenue for a power generation project in return for a stable energy supply.  Hachey Aff. at ¶ 16.  Section 83 provides a powerful incentive to enter such a contract.  If the contract is approved by the Defendants pursuant to Section 83 (3rd para.), the regulated distribution company will receive from ratepayers, in addition to the amount necessary to offset the contract payments and the distribution company's other costs, "an annual remuneration … equal to 4 per cent of the annual payments under the contract."  Hachey Aff. at ¶ 18 and Ex. F, page 47.  The public will pay this added 4% regulatory reward in the form of higher rates in their monthly utility bills for years into the future.

The legislature directed that this program be open to generating projects that "have a commercial operation date … on or after January 1, 2008."  Section 83, 3rd para; Hachey Aff., Ex. F, page 48.  TransCanada's Kibby Wind Farm project in Maine became operational in October 2009 and meets this criterion.  Hachey Aff. at ¶ 6.  The Kibby Wind Farm is interconnected to the ISO-New England power transmission grid,[3] and transmits its power to Massachusetts in interstate commerce.  Hachey Aff. at ¶ 6.

---

[3]  The New England Independent System Operator ("ISO-New England"), controls the transmission of all power into and through New England (except for a portion of northern Maine).  Hachey Aff., Ex. C, page 4.

Section 83 further provides, however, that the required contracts may only be entered

with generators that are located in Massachusetts (1st para.; emphasis added):

> Commencing on July 1, 2009, and continuing for a period of 5
> years thereafter, each distribution company ... shall be required
> twice in that 5-year period to solicit proposals from renewable
> energy developers and, provided reasonable proposals have been
> received, enter into cost-effective long-term contracts to facilitate
> the financing of renewable energy generation within the
> jurisdictional boundaries of the commonwealth, including state
> waters or in adjacent federal waters.

Hachey Aff., Ex. F, page 47.  This provision bars TransCanada from the required contracts.

Under Section 83 the eligible projects include projects that are located offshore in state or federal

waters, but do not include projects that are located across a state boundary, even though they

connect to the same power grid that serves Massachusetts.

The local distribution companies in Massachusetts, which are subject to Section 83,

include the large electric utilities such as National Grid, NSTAR, Unitil, and Western

Massachusetts Electric Company.  They account for more than 85% of the purchases of power

for distribution in Massachusetts.  Hachey Aff. at ¶ 22.  Section 83 requires these companies to

enter long-term contracts, but bars TransCanada from the required arrangements.

Regulations.  DPU's regulations implementing Section 83 are codified beginning at 220

C.M.R. 17.00.  Hachey Aff., Ex. H.  DOER has issued proposed regulations to be codified

beginning at 225 C.M.R. 18.00.  Hachey Aff., Ex. K.

The RFP.  On January 20, 2010, DOER announced that it had begun a process for

soliciting the required long-term contracts.  Hachey Aff., Ex. I.  DOER coordinated the issuance

of a Request For Proposals For Long-Term Contracts For Renewable Energy Projects ("the

RFP") dated January 15, 2010.  Hachey Aff., Ex. J.  The RFP was issued on behalf of the four

leading electric distribution companies, National Grid, NSTAR, Unitil, and Western

Massachusetts Electric Company.

The RFP solicited bids from generators, specifying that (page 6; emphasis added):

> (c)   Pursuant to Section 83 of the GCA, the generation facility
> must be located <u>within the jurisdictional boundaries of the
> Commonwealth</u>, including state waters, or in adjacent federal
> waters.

The RFP timetable provided that the generators and utilities would negotiate contracts by

June 21, 2010; then the utilities would submit the contracts to DPU by July 21, 2010; and

thereafter DPU would review the contracts with input from the Attorney General's Office.

Hachey Aff., Ex. J, page 17.  Thus the RFP process is expected to run for at least several months

more before the contracts will be approved by DPU.  Hachey Aff. at ¶ 29.  The RFP also

provided that all of these dates are subject to being extended.  Hachey Aff., Ex. J, page 20.

<u>Private Contracts</u>.  As an alternative to the RFP coordinated by the state officials, the

electric distribution companies may meet the requirements of Section 83 by privately negotiating

a long-term contract.  <u>See</u> Section 83 (2nd para.); Hachey Aff., Ex. F, page 47.  DOER must be

consulted in its regulatory capacity in the process of soliciting and negotiating such a contract.

225 C.M.R. 18.04; Hachey Aff., Ex. K.  Where a private contract is approved by DPU under 220

C.M.R. 17.04, the distribution company will receive the 4% remuneration incentive.  On their

face, Section 83 and the regulations at 220 C.M.R. 17.04 bar out-of-state generators from

bidding on the remunerated contracts.

The first party to the state's largest renewable energy contracts recently disavowed the

discriminatory requirement in Section 83.  On May 10, 2010, National Grid submitted to DPU

two contracts that it has negotiated with Cape Wind.  Hachey Aff. at ¶¶ 32-34 and Exs. L-N.

National Grid stated as follows in its filing letter (emphasis added):

> National Grid is <u>cognizant of the recent lawsuit filed by</u>
> <u>TransCanada Power Marketing LTD</u>, challenging the
> constitutionality of one of the requirements in Section 83 of the
> Green Communities Act and the regulations promulgated under
> it…. Section 83 … contains specific provisions to address the
> possibility of the jurisdictional boundaries clause or any other
> provision being challenged judicially, and provides the authority to
> the Department to suspend the applicability of the challenged
> provision.  National Grid will be requesting that the Department
> exercise this authority and <u>suspend the applicability of the</u>
> <u>jurisdictional boundaries clause</u> of the Act for purposes of this
> proceeding.

Hachey Aff., Ex. L.  Since National Grid has apparently disavowed the clause that is challenged

in this lawsuit, and although TransCanada reserves all rights generally, TransCanada does not

ask this Court at this time to reopen those privately negotiated contracts.  Instead, in its narrowly

tailored request for injunctive relief, TransCanada only seeks to reopen the state-sponsored RFP.

      2.    <u>Section 83's Discriminatory Requirement Violates The Commerce Clause.</u>

"States may not enact laws that burden out-of-state producers or shippers simply to give a

competitive advantage to in-state businesses."  <u>Granholm v. Heald</u>, 544 U.S. 460, 472 (2005).

<u>See</u> <u>also</u> <u>Camps Newfound/Owatonna</u>, 520 U.S. at 578 ("Avoiding… economic Balkanization,

and the retaliatory acts of other States that may follow, is one of the central purposes of our

negative Commerce Clause jurisprudence.") (internal citations omitted); <u>Houlton Citizens' Coal.</u>

<u>v. Town of Houlton</u>, 175 F.3d 178, 188 (1st Cir. 1999) ("The core purpose of the dormant

Commerce Clause is to prevent states and their political subdivisions from promulgating

protectionist policies.").  In keeping with this well-established principle, "[a] discriminatory law

is virtually per se invalid."  <u>Family Winemakers</u>, 592 F.3d at 9.  Such a state law "will survive

only if it advances a legitimate local purpose that cannot be adequately served by reasonable non-discriminatory alternatives." Id.[4]

No legitimate purpose supports the discriminatory feature of the Long-Term Renewable Energy Contract program. Its purpose is to favor Massachusetts producers. The flow of electrons derived from renewable sources in Massachusetts is absolutely identical to the flow of electrons derived from renewable sources in Maine. Renewable energy sources in both states are connected to the same ISO-New England power grid. From an engineering or physical perspective, once power has been generated, there is no way to trace the moving electrons from the generation source to their consumer. Yet the laws challenged in this lawsuit make a distinction based solely on the in-state physical location of the generation unit.

The Supreme Court struck down an analogous state law in Wyoming v. Oklahoma, 502 U.S. 437 (1992), where Oklahoma had legislated that utilities must purchase 10% of their needs from coal mined in Oklahoma, to the exclusion of coal mined in Wyoming. Id. at 443. The Supreme Court declared that "[s]uch a preference for coal from domestic sources cannot be characterized as anything other than protectionist and discriminatory, for the Act purports to exclude coal mined in other States based solely on its origin." Id. at 456. The same is true here.

B.    TransCanada Is Likely To Suffer Irreparable Harm.

TransCanada and its corporate affiliates have developed the Kibby Wind Farm in Maine at a capital cost of more than $300 million. Hachey Aff. at ¶ 6. TransCanada wishes to market the Kibby wind energy in Massachusetts. During the next 10-15 years, the contracts required by Section 83 are likely to be the principal purchases and sales of renewable energy in Massachusetts. Id. at ¶ 22. There are a finite number of these contracts for a finite amount of

---

[4] Instead of burdening commerce, in many cases a state is free to spend general tax revenues on subsidies to local producers. Ordinarily, such subsidies do not restrain the flow of commerce between the states, and therefore do not violate the Commerce Clause. See West Lynn Creamery, Inc. v. Healy, 512 U.S. 186, 199 (1994).

power, being sold to the distribution companies that account for approximately 86% of all electric power purchased for delivery in Massachusetts. Id. As Section 83 is being implemented, TransCanada is being deprived of the opportunity to compete for these critically important long-term customer relationships. Once these contracts are entered and approved, most likely there will be no effective future remedy to reopen the 10-15 year exclusionary contracts.

Where a plaintiff is foreclosed from "a unique or fleeting business opportunity," this is often recognized as irreparable harm supporting the entry of a preliminary injunction. Starlight Sugar, 114 F.3d at 332 (importers foreclosed from participating in the market); see also Hyde Park Partners v. Connolly, 839 F.2d 837, 853 (1st Cir. 1988) (delay to tender offer). Courts frequently recognize that the possibility of a future award of damages is not an adequate remedy where the competitive opportunity is "evanescent." Starlight Sugar, 114 F.3d at 332. If TransCanada misses the opportunity to compete for the required long-term contracts, the fact of harm will be clear, but it may be difficult to measure the resulting damages after the fact. O'Donnell Constr. Co. v. District of Columbia, 963 F.2d 420, 428 (D.C. Cir. 1992). Measuring damages will require a difficult calculation of which contracts TransCanada would have won -- at what prices -- were it not for discrimination. "The difficulty of such an inherently speculative showing weighs heavily in favor of granting the injunction, especially since [the Plaintiff's] likelihood of success is so high." Id.

C.    The Balance Of Harms Favors Entering A Preliminary Injunction.

Rather than waiting to look back after the fact, courts often recognize that a "forward-looking injunction would not upset any contractual relations already in place, thus minimizing the adverse impact on third parties." O'Donnell Constr., 963 F.2d at 429. Such is the case here. The status quo with respect to the RFP is as follows: utilities have received bids from

Massachusetts generators;  the terms of those bids are confidential;  contracts are to be negotiated by June 21, 2010;  contracts are to be filed with the DPU by July 21, 2010;  and thereafter comments will be sought from the Attorney General's Office.  Hachey Aff. at ¶ 29, and Ex. J at 17.  Thus the process is expected to run several months before DPU passes on the contracts.  In a process of this nature, a delay measured in weeks is not surprising.  Hachey Aff. at ¶ 37.  It is practical to order that the Defendants shall not approve contracts under the RFP unless the RFP is (1) reopened to permit out-of-state bidders to be considered on a non-discriminatory basis, or else (2) withdrawn and reissued without discrimination.

The Massachusetts-based bidders are not operational at this date, and thus the Massachusetts bids involve substantial uncertainty.  Hachey Aff. at ¶ 39.  By contrast, the Kibby Wind Farm is already in operation generating power, and thus its costs are much more fully defined.  TransCanada has reviewed the terms of the publicly filed contracts between National Grid and Cape Wind.  Based on this review and based on its knowledge of the other renewable energy projects, TransCanada is confident that if it is allowed to bid on the RFP, TransCanada will be able to offer a bid that is more attractive, in viability and in price, than the bids from Massachusetts generators.  Id. at ¶¶ 35, 39.  The discriminatory process to date, limiting bids to Massachusetts generators, has prevented TransCanada from offering these potential benefits.

A short delay may benefit the utilities -- and consumers -- by inviting more attractive bids from TransCanada and other out-of-state projects competing to sell power.  Id. at ¶¶ 38-39.  A short delay will not harm the utilities.

To the extent that Massachusetts-based generators have submitted bids already, they are bound by the specifications of the RFP, which expressly provides that the dates are subject to being extended.  Hachey Aff., Ex. J, page 20.  If these in-state bidders are less competitive than

TransCanada, they have no reasonable basis to rely on barring TransCanada from competing. See, e.g., Abel Converting, Inc. v. United States, 679 F. Supp. 1133, 1137, 1139-42 (D.D.C. 1988) (balance of fairness favors providing injured competitor with "an opportunity to bid"). See also Starlight Sugar, Inc. v. Soto, 909 F. Supp. 853, 862 (D.P.R. 1995) ("interest in maintaining … monopoly is clearly outweighed by the plaintiffs' interest in exercising their Constitutional right to try to participate in that market"), aff'd, 114 F.3d 330, 331 (1st Cir. 1997) (affirming for the reasons stated by the District Court).

D.     An Injunction Is In The Public Interest.

Competition on price and viability is in the public interest. If the RFP is opened to out-of-state bidders, TransCanada will have the opportunity to offer wind energy at prices and terms that are more attractive than those of Massachusetts bidders. Hachey Aff. at ¶¶ 35, 39. Kibby Wind Farm's first phase is already in operation, and therefore it provides much greater certainty than the Massachusetts projects, which are not yet operational. Id. at ¶ 39. If TransCanada and other out-of-state generators are able to offer terms that are more competitive than the in-state bids, this competition will tend to reduce the rates for electric power paid by Massachusetts businesses and citizens. Id. at ¶¶ 39, 41. Conversely, limiting the program to projects physically located in Massachusetts tends to increase the rates paid for renewable energy. Increased costs and rates constitute harm to the public. See Mississippi Power & Light Co. v. United Gas Pipe Line Co., 760 F.2d 618, 626 (5th Cir. 1985) (recognizing "[t]he vital public interest involved in protecting the consumers of [a utility company] against the harmful effect of overcharges").

The injunction sought will benefit the public because without it utilities may have a strong incentive to accept assignment of the second Cape Wind contract -- which, if approved by DPU, will afford a high remuneration. Hachey Aff. at ¶¶ 18, 34. TransCanada's bid will offer a lower price, which will afford a lower remuneration. If TransCanada is not given an opportunity

to bid on the RFP now, before the Cape Wind contracts are reviewed by DPU, TransCanada may never again have an opportunity to compete on the merits for the required contracts. Id. at ¶ 34.

Where a violation of the Commerce Clause leads to increased costs for renewable energy, in turn it also slows the adoption of renewable energy by the purchasing public, which contravenes the legitimate objectives of the program. See, e.g., Kassel v. Consol. Freightways Corp., 450 U.S. 662, 675 (1981). This consideration also weighs in favor of entering an injunction. Indeed, "[s]hould the statute be unconstitutional, the public interest would be adversely affected by denial" of an injunction. Hyde Park Partners, 839 F.2d at 854.

In addition, the public interest will not be harmed by the injunction sought, because it will not affect the established Massachusetts renewable energy program. See Mass. Gen. L. ch. 25A, § 11F(a)-(b); see also pages 1-2 above. Only the discriminatory feature of the new Long-Term Contract program is being challenged. The public interest is served by this limited intervention.

III.   **AN INJUNCTION SHOULD BE ENTERED IN THE FORM ATTACHED TO TRANSCANADA'S MOTION.**

The Massachusetts legislature included a severability clause in Section 83 (11th para.):

> If any provision of this section is subject to a judicial challenge, the department of public utilities may suspend the applicability of the challenged provision during the pendency of the judicial action until final resolution of the challenge and any appeals, and shall issue such orders and take such other actions as are necessary to ensure that the provisions that are not challenged are implemented expeditiously to achieve the public purposes of this provision.

Hachey Aff., Ex. F, page 49.  In keeping with this directive of the legislature, the appropriate

remedy is to strike out the discriminatory feature of Section 83, while preserving the remainder

of the Long-Term Renewable Energy Contract program.[5]

TransCanada's Motion submits a proposed form of injunction, which is appropriate and

narrowly tailored.

Paragraph A of the requested injunction will provide as follows:

> (A)    The Defendants shall not enforce Section 83 of the Green
> Communities Act and the regulations at 220 C.M.R. 17.00 et seq.,
> to the extent they provide that long-term contracts for renewable
> energy, in order to qualify under these laws, must be entered with
> generators located in Massachusetts (to the exclusion of generators
> located outside Massachusetts).  Any contract entered pursuant to
> Section 83 may be entered with a generator located out-of-state.
> Any electric distribution company entering a contract pursuant to
> Section 83 shall not be required to contract with a generator
> located in Massachusetts.

The injunction sought will excise the discriminatory requirement from Section 83.  If the

injunction is granted, any contracts entered pursuant to Section 83 -- both privately negotiated

contracts and contracts entered via the RFP -- may be entered with generators located out-of-

state.

Paragraph B of the requested injunction will provide as follows:

> (B)    The Defendants shall not proceed with, or approve any
> contract solicited under, the Request For Proposals that was issued
> on January 15, 2010 ("the RFP") calling for bids from
> Massachusetts generators on long-term contracts for renewable
> energy, unless: (1) the RFP is reopened until July 2, 2010, to
> permit bids from generators located outside Massachusetts on a
> non-discriminatory basis, or else (2) the RFP is withdrawn and
> reissued in the same form except excising any discrimination,
> direct or indirect, against generators located outside Massachusetts.

---

[5] Citing this same severability clause, National Grid has already asserted that the discriminatory feature of Section 83 should be suspended for DPU review of the National Grid/Cape Wind contracts.  See page 10, supra.  The injunction sought by TransCanada will suspend the discriminatory feature for all contract solicitations subject to Section 83.

The injunction sought will order that the Defendants must conduct the RFP process on a non-discriminatory basis.  The Defendants should not approve any contracts solicited under the RFP unless the RFP is (1) reopened to bids from out-of-state generators on a non-discriminatory basis, or else (2) withdrawn and reissued without any form of discrimination.

The injunction sought by TransCanada will preserve the status quo, protect TransCanada, and serve the public interest.  Hachey Aff. at ¶¶ 40-41.

## CONCLUSION

For all of the reasons explained above and in the Affidavit of Michael Hachey, TransCanada respectfully requests that the Court enter a preliminary injunction in the form attached to TransCanada's Motion.

> TRANSCANADA POWER
> MARKETING LTD.,
> By its attorneys,
>
>
> */s/ Robert M. Buchanan, Jr.*
> Robert M. Buchanan, Jr. (BBO# 545910)
>     rbuchanan@choate.com
> Daniel C. Winston (BBO# 562209)
>     dwinston@choate.com
> CHOATE, HALL & STEWART LLP
> Two International Place
> Boston, MA  02110
> 617-248-5000

Dated:  June 1, 2010

## CERTIFICATE OF SERVICE

I, Robert M. Buchanan, Jr., hereby certify that this Memorandum of Law in Support of Plaintiff's Motion for a Preliminary Injunction filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants on June 1, 2010. In addition, PDF copies will be sent by e-mail to Kenneth Kimmell, Esq. and to Timothy Casey, Esq., who represent the Defendants.

/s/ Robert M. Buchanan, Jr.
Robert M. Buchanan, Jr.

4659774v5                                   19